UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**LILAWATIE RAGBIR,**

        **Plaintiff,**

-vs-                                                            Case No. 6:09-cv-321-Orl-19DAB

**IMAGINE SCHOOLS OF DELAWARE, INC.,
FOUNDATION FOR OSCEOLA EDUCATION,
INC.,**

        **Defendants.**

_____

# ORDER

This case comes before the Court on the following:

1. Motion for Summary Judgment by Defendant Foundation for Osceola Education, Inc., (Doc. No. 5, filed Feb. 18, 2009);

2. Motion to Remand by Plaintiff Lilawatie Ragbir, (Doc. No. 18, filed Mar. 19, 2009);

3. Response in Opposition to Motion to Remand by Defendants Imagine Schools of Delaware, Inc., and Foundation for Osceola Education, Inc., (Doc. No. 19, filed Apr. 2, 2009);

4. Motion to Deny Defendant's Motion for Summary Judgment as Premature or, Alternatively, to Allow a Delay of Plaintiff's Response to Defendant's Motion for Summary Judgment Pending Discovery by Plaintiff, (Doc. No. 20, filed Apr. 8, 2009); and

5. Response in Opposition to Plaintiff's Motion to Deny Defendant's Motion for Summary Judgment as Premature or, Alternatively, to Allow a Delay of Plaintiff's

Response to Defendant's Motion for Summary Judgment Pending Discovery by Defendant Foundation of Osceola Education, Inc., (Doc. No. 22, filed Apr. 22, 2009).

**Background**

On February 19, 2008, Plaintiff Lilawatie Ragbir brought this action in state court against Defendants Imagine Schools of Delaware, Inc. ("Imagine"), and the Foundation for Osceola Education, Inc. ("Foundation"), alleging a violation of Florida's Whistle Blower's Act, § 448.102, Fla. Stat. (2008). (Doc. No. 2 at 1.) Plaintiff, in her Verified Complaint, states that Defendant Foundation is a Florida non-profit corporation that owns the charter for P.M. Wells Charter Elementary School ("P.M. Wells") in Osceola County, Florida. (*Id.* at 2.) Defendant Foundation contracted[1] with Defendant Imagine to provide management services for the P.M. Wells school facility. (*Id.* at 3.)

According to the Complaint, Plaintiff began as a volunteer for Defendant Imagine at P.M. Wells. (*Id.*) She was hired as a business manager by Defendant Imagine on January 11, 2005, and she also served as an administrative assistant to the principal. (*Id.*) According to Plaintiff, between February of 2005 and August of 2006, she complained of racial and ethnic discrimination and objected to illegal expenditures and accounting methods at the school. (*Id.* at 1, 4.) On or about

---

[1] The Amended and Restated Charter School Management Agreement ("Management Agreement") between the parties was signed on behalf of Defendant Foundation and Chancellor Academies, Inc. (Doc. No. 1-6 at 9.) Defendant Imagine merged with Chancellor Academies, Inc., in 2004 and assumed the contractual obligations under the Management Agreement. (*Id.* at 1.) The parties do not dispute that Defendant Imagine is a proper party to the Management Agreement. (*Id.*; Doc. No. 18 at 5-6.)

August 21, 2006,[2] Plaintiff was terminated from her position as business manager, but "[a]s a consolation," she was offered a position assisting with scheduling or as a substitute. (*Id.* at 7.) Plaintiff declined this offer and contends that she was terminated in retaliation for her complaints of discrimination and objections to illegal financial practices at the school. (*Id.* at 8.) Plaintiff's Verified Complaint states generally that she seeks damages in excess of $15,000. (*Id.* at 2.) Both Defendants answered the Complaint, denying Plaintiff's allegations. (Doc. Nos. 3-4.)

Just shy of a year after Plaintiff filed her Complaint in state court, Defendants filed a Notice of Removal. (Doc. No. 1, filed Feb. 18, 2009.) In their Notice, Defendants claim to have just recently received information which indicates that the damages claimed by Plaintiff exceed $75,000. (*Id.* at 3-4.) In addition, they aver that Defendant Foundation, a Florida non-profit corporation, was fraudulently joined as a defendant to defeat diversity jurisdiction. (*Id.* at 4-5.) Therefore, according to Defendants, removal was timely and proper.

Defendant Foundation filed in this Court a Motion for Summary Judgment which it had previously filed in state court. (Doc. No. 5, filed Feb. 18, 2009.) In this Motion, Defendant Foundation contends that it is not liable under Florida's Whistle Blower Act because it was not Plaintiff's employer. (*Id.* at 1.) Plaintiff, although given notice that the Motion would be taken under advisement on March 24, 2009, (Doc. No. 9, filed Feb. 19, 2009), has failed to file a timely response. Instead, Plaintiff has filed a Motion to Remand and a Motion to Deny Defendant's Motion for Summary Judgment, both of which are opposed. (Doc. Nos. 18-20, 22.)

---

[2] The Complaint begins using dates in the year 2007 on page 7 but the context suggests that these events actually took place in 2006. Plaintiff's deposition testimony also clarifies that the relevant events took place in 2006. (Doc. No. 1-5 at 7-8.)

**Analysis**

In the Notice of Removal, Defendants assert that their removal is timely based on the information made available to them by Plaintiff. (Doc. No. 1 at 3-4.) In other words, Defendants did not have sufficient evidence to remove the action prior to Plaintiff's deposition on February 12, 2009, due to uncertainty as to the amount of Plaintiff's claimed damages. (*Id.*) They also state that Plaintiff's deposition testimony made clear that Defendant Foundation was fraudulently joined when Plaintiff admitted under oath that she was not employed by Defendant Foundation. (*Id.* at 4-5.)

In response, Plaintiff argues that Defendants had information sufficient to calculate her claimed damages as of September of 2008,[3] thus making removal in February of 2009 untimely. (Doc. No. 18 at 2-4.) Moreover, Plaintiff contends that the Management Agreement between Defendant Imagine and Defendant Foundation provides evidence that these two entities jointly employ Plaintiff, thus demonstrating that Defendant Foundation is not fraudulently joined. (*Id.* at 4-8.) Accordingly, Plaintiff moves to remand the case to state court. (*Id.* at 8.)

**I.     Timeliness of Removal**

Removal jurisdiction exists only where the federal court would have had original jurisdiction over the action. *Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 592 (2004). When removal is based on diversity jurisdiction, the defendant must make "an affirmative showing . . . of all requisite factors of diversity jurisdiction, including amount in controversy, at the time removal

---

[3] According to Plaintiff, in approximately September of 2008, the amount allegedly due to Plaintiff in back pay would have exceeded $75,000. (Doc. No. 18 at 3-4.) Plaintiff argues that Defendants had actual knowledge of Plaintiff's salary and could have determined the value of her claim based on this information and the allegations in the Complaint. (*Id.*)

-4-

is attempted." *Gaitor v. Peninsular & Occidental S.S. Co.*, 287 F.2d 252, 255 (5th Cir. 1961).[4]
Diversity jurisdiction requires that all plaintiffs be diverse from all defendants and that the amount in controversy exceed $75,000. 28 U.S.C. § 1332(a)-(b) (2006). Additionally, a diversity case may not be removed if any one of the defendants is a citizen of the forum state. *Id.* § 1441(b).

The federal removal statute sets forth the proper procedure for removal of state actions to federal court and provides in relevant part:

> The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.
>
> If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable, except that a case may not be removed on the basis of jurisdiction conferred by section 1332 of this title more than 1 year after commencement of the action.

*Id.* § 1446(b).

The Eleventh Circuit has clarified the requirements of this statutory provision, explaining that "[u]nder the first paragraph of § 1446(b), a case may be removed on the face of the complaint if the plaintiff has alleged facts sufficient to establish the jurisdictional requirements." *Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1215 n.63 (11th Cir. 2007). The court continued:

> Under the second paragraph, a case becomes removable when three conditions are present: there must be (1) an amended pleading, motion, order or other paper, which

---

[4] The Eleventh Circuit Court of Appeals adopted as binding precedent all prior decisions of the former Fifth Circuit Court of Appeals issued prior to October 1, 1981. *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

(2) the defendant must have received from the plaintiff (or from the court, if the document is an order), and from which (3) the defendant can first ascertain that federal jurisdiction exists.

*Id.* (citations and quotation marks omitted). Under either paragraph, "the documents received by the defendant must contain an unambiguous statement that clearly establishes federal jurisdiction." *Id.* (citations omitted).

In the instant case, Plaintiff does not at this time contest that her claimed damages exceed $75,000; she instead argues that the removal was untimely because Defendants had prior notice of this fact. (Doc. No. 18 at 2-4.) Plaintiff's Complaint, however, is ambiguous as to the amount of damages claimed and states only that Plaintiff's damages exceed $15,000. (Doc. No. 2 at 2.) Because of this ambiguity, Defendant Imagine sought more specific calculations of Plaintiff's asserted damages through discovery and requested an admission that she was seeking in excess of $75,000. (Doc. No. 1-3 at 13.) Plaintiff answered that she was unable to admit or deny that her claim was excess of that amount. (*Id.* at 23.)

In response to an Interrogatory asking her to "[e]xplain in detail the amount claimed and method of computation of damages," (Doc. No. 17-2 at 5), Plaintiff stated generally:

> Plaintiff objects as overly broad, vague and ambiguous and insofar as [this Interrogatory] calls for information subject to attorney client privilege and/or the work product doctrine.
>
> Without waiver of objections, Plaintiff states, Plaintiff is seeking any and all damages to which she is entitled under the law and which may be determined appropriate by a jury or Judge including, but not limited to, back pay, out-of-pocket expenses, front pay and/or reinstatement, liquidated damages, compensatory damages, pre-judgment interest, attorneys' fees and costs, and any appropriate injunctive and/or declaratory relief.
>
> The back pay will be calculated as the amount of dollars the Plaintiff should have earned but for the illegal conduct less money she earned in mitigation efforts through the date of trial, including the value of any and all benefits. In general,

> Plaintiff will start with the salary she was making while working for Defendant and subtract that from what she should have been making but for her unlawful termination. Then, for the time period after she was illegally terminated, Plaintiff will calculate the amount she should have been earning plus the value of her benefits lost up until she was able to find substitute employment. The value of lost wages from that time of her termination until present will be calculated by taking the amounts she should be making (including any subsequent promotions/ raises that she should have had, based on her past promotions and work performance awards), and subtracted from that which she actually made.
>
> In addition, the Plaintiff will compare the value of benefits, if not completely replaced. The value of benefits will likely be calculated by an expert, but documents in the control of Defendants are necessary to make those determinations.
>
> The out-of-pocket expenses will represent actual out-of-pocket money lost by Plaintiff because of the illegal conduct. Front pay will likely be calculated utilizing an appropriate statistical or mathematical analysis which has not yet been determined.
>
> Attorneys' fees will be calculated by multiplying the approved hourly rate(s) by the number of hours reasonably expended in this case and costs will represent actual costs incurred. Both attorneys' fees and costs may also be multiplied by a judicially approved formula, if the Court finds it appropriate. Any injunctive and/or declaratory relief will be determined by the Court utilizing whatever means, method, or formula it deems appropriate. All documents that may be produced in discovery in this case may support Plaintiffs right to and/or the value of Plaintiffs damages.

(*Id.* at 5-6.)

Finally, during her deposition on February 12, 2009, Plaintiff stated that she made $36,000 for the 2005-2006 school year and had not received any income since her termination in August of 2006. (Doc. No. 1-5 at 7-8.) From this information, Defendants were able to reasonably deduce that Plaintiff's damages exceeded $75,000. (Doc. No. 1.) Six days later, on February 18, 2009, Defendants removed the action to federal court. (*Id.*)

Plaintiff contends that the removal is untimely because "[i]n the instant case, Defendants [had] direct knowledge of the value of Plaintiff's claim" because they knew her salary and could easily compute her back wages. (Doc. No. 18 at 3.) In response, Defendants explain that they did

not have a good faith basis for removal prior to Plaintiff's deposition because they were unable to ascertain the exact amount of damages sought from any papers Plaintiff served on them. (Doc. No. 19 at 2-5.) Defendants also explain that, until Plaintiff's deposition, they did not know whether Plaintiff had mitigated her damages by seeking other employment. (*Id.* at 4.) In other words, the deposition testimony was the first time that Plaintiff provided an unambiguous statement concerning the value of her damages. (*Id.* at 4-5.) Only then were Defendants able to determine with reasonable certainty that Plaintiff's damages exceeded the jurisdictional minimum of $75,000. (*Id.*)

The parties disagree as to what event or information triggered the time period for removal. The Eleventh Circuit has explained that the thirty-day time limit does not begin to run until a defendant receives an unambiguous statement from the plaintiff[5] which clearly establishes federal jurisdiction. *Lowery*, 483 F.3d at 1215 n.63. When not readily ascertainable from the complaint, this statement may come from any "other paper" from the plaintiff, including deposition testimony. *Id.* at 1212 n.62 (citation omitted). Evidence independently gathered by the defendant "from outside sources . . . . is not of the sort contemplated by § 1446(b)." *Id.* at 1221. From this reasoning, it follows that a defendant's actual knowledge of the value of the plaintiff's claim is irrelevant because the triggering "other paper" must come from the plaintiff (or the court).

Consistent with this analysis, the Fifth Circuit Court of Appeals has explained that a bright-line rule which considers only the papers received by the defendant "promotes certainty and judicial efficiency by not requiring courts to inquire into what a particular defendant may or may not

---

[5] Although the Eleventh Circuit recognized that a "paper" may come from the court, neither side has suggested and the record does not indicate that this possibility is applicable in the instant case.

subjectively know." *Chapman v. Powermatic, Inc.*, 969 F.2d 160, 163 (5th Cir. 1992). Similarly, a district judge in the Northern District of Florida, relying on *Chapman*, concluded:

> Nothing in the text of Section 1446(b) explicitly precludes reliance on that provision by a defendant who has prior knowledge a plaintiff is seeking damages in excess of the required jurisdictional amount. Adding an actual knowledge limitation would complicate an otherwise straightforward statutory provision, adding a cloud of uncertainty over removal actions, and requiring courts to engage in the difficult and uncertain task of determining whether a particular communication could have (or should have) provided adequate notice to a defendant of a plaintiff's claimed damages.

*Callahan v. Countrywide Home Loans, Inc.*, No. 3:06-cv-105, 2006 WL 1776747, at *4 (N.D. Fla. June 26, 2006). In addition, this Court has previously concluded that the plain language of the removal statute and the greater weight of the case law makes clear that the time period to remove an action depends solely on papers presented to the defendant by the plaintiff and not on the defendant's actual knowledge of the value of the claim. *Del Rio v. Scottsdale Ins. Co.*, No. 6:05-cv-1429-Orl-19JGG, 2005 WL 3093434, at *3-*4 (M.D. Fla. Nov. 18, 2005) (citing cases).

Thus, the law weighs in favor of Defendants' argument. Plaintiff refused to admit that her damages exceeded $75,000 or to clarify her damages calculations throughout discovery. Only when asked directly about the value of her claims during her deposition did Plaintiff provide clear information concerning her damages. Because Plaintiff did not provide an unambiguous statement establishing that her damages exceeded the jurisdictional minimum of $75,000 until February 12, 2009, the February 18, 2009 removal by Defendants was timely. Therefore, Plaintiff's Motion to remand on untimeliness grounds must be denied.

## II. Fraudulent Joinder

To support their argument for diversity jurisdiction and proper removal of this action, Defendants contend that Defendant Foundation, the resident defendant, was fraudulently joined to

defeat diversity jurisdiction. (Doc. No. 1 at 4-5; Doc. No. 19 at 5-12.) Plaintiff, relying on a joint employer theory of liability, responds that the Management Agreement between Defendant Imagine and Defendant Foundation raises an issue of fact as to whether Defendant Foundation was an "employer" of Plaintiff under Florida's Whistle Blower Act. (Doc. No. 18 at 4-8.)

### A. The Law

#### 1. Proper Procedures and Applicable Substantive Standards

As explained by the Eleventh Circuit, "[w]hen a plaintiff names a non-diverse defendant solely in order to defeat federal diversity jurisdiction, the district court must ignore the presence of the non-diverse defendant and deny any motion to remand the matter back to state court." *Henderson v. Wash. Nat'l Ins. Co.*, 454 F.3d 1278, 1281 (11th Cir. 2006). The plaintiff's inclusion of a non-diverse defendant in this manner is referred to as "fraudulent joinder" and does not defeat removal diversity jurisdiction. *Id.* Instead, "the federal court must dismiss the non-diverse defendant and deny any motion to remand . . . ." *Florence v. Crescent Res., LLC*, 484 F.3d 1293, 1297 (11th Cir. 2007) (citing *Henderson*, 454 F.3d at 1281).

To establish fraudulent joinder, a defendant must demonstrate that either: "(1) there is no possibility the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court." *Henderson*, 454 F.3d at 1281 (quoting *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997)). "The defendant must make such a showing by clear and convincing evidence." *Id.* (citing *Parks v. N.Y. Times Co.*, 308 F.2d 474, 478 (5th Cir. 1962)).

In determining whether a defendant is fraudulently joined,[6] a federal court utilizes a procedure similar to that used in deciding motions for summary judgment. *Crowe*, 113 F.3d at 1538, 1542. First, "the district court must evaluate the factual allegations in the light most favorable to the plaintiff and must resolve any uncertainties about state substantive law in favor of the plaintiff." *Id.* at 1538 (citing *B, Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir. Unit A 1981)). "The federal court makes these determinations based on the plaintiff's pleadings at the time of removal; but the court may consider affidavits and deposition transcripts submitted by the parties." *Id.* (citing *B, Inc.*, 113 F.3d at 549). The court resolves all questions of fact in favor of the plaintiff. *Legg v. Wyeth*, 428 F.3d 1317, 1323 (11th Cir. 2005) (quoting *Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1561 (11th Cir. 1989)).

Next, the federal court must determine whether, based on its review of the materials described above, the plaintiff's claim "is an arguable one under state law." *Crowe*, 113 F.3d at 1538 (citing *B, Inc.*, 663 F.2d at 548-59). This substantive part of the analysis is distinct from the standard used to evaluate motions for summary judgment. As the Eleventh Circuit explained:

> In terms of this circuit's law, the main point for us is this one: For a Plaintiff to present an arguable claim against an in-state defendant and, therefore, to require a case removed to federal court to be remanded to state court, the plaintiff need not show that he could survive in the district court a motion for summary judgment filed by that in-state defendant. For a remand, the plaintiff's burden is much lighter than that: after drawing all reasonable inferences from the record in the plaintiff's favor and then resolving all contested issues of fact in favor of the plaintiff, there need only be a reasonable basis for predicting that the state law might impose liability on the facts involved. Because the procedures are similar while the substantive standards are very different, district courts must exercise extraordinary care to avoid jumbling up motions for remand and motions for summary judgment that come before them.

---

[6] In the instant case, Defendants allege fraudulent joinder under the "no possibility" theory; therefore, analysis will be limited to the law related to the first type of fraudulent joinder.

*Id.* at 1541-42 (citations and quotation marks omitted). Thus, when considering a motion to remand when a defendant has raised the issue of fraudulent joinder, "the district court's authority to look into the ultimate merit of the plaintiff's claims must be limited to checking for obviously fraudulent or frivolous claims." *Id.* at 1542. "[I]f there is any possibility that the state law might impose liability on a resident defendant under the circumstances alleged in the complaint, the federal court cannot find that joinder of the resident defendant was fraudulent, and remand is necessary." *Florence*, 484 F.3d at 1299 (citations omitted).

While Plaintiff is correct that Defendants' burden to demonstrate fraudulent joinder is a "heavy one," *Crowe*, 113 F.3d at 1538 (quoting *B, Inc.*, 663 F.2d at 549), this burden is not insurmountable. As the Eleventh Circuit explained in *Legg*, "[t]he potential for legal liability 'must be reasonable, not merely theoretical.'" *Legg*, 428 F.3d at 1325 n.5 (quoting *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002)). The court continued, "In considering *possible* state law claims, possible must mean 'more than such a possibility that a designated resident can be hit by a meteor tonight. That is possible. Surely, as in other instances, reason and common sense have some role.'" *Id.* (quoting *Braden v. Wyeth*, No. CV-04-PT-235-E, 2004 WL 3569804, at *1 (N.D. Ala. June 30, 2004)). Thus, in *Legg*, the Eleventh Circuit found that removal was proper where the only evidence in the record was provided by the defendants, was undisputed by the plaintiffs, and demonstrated that joinder of the resident defendant was improper. *Id.* at 1323-25; *see also id.* at 1323 ("the Defendants submitted sworn affidavits that were undisputed and, in such a case, a court cannot resolve the question of fraudulent joinder by refusing to consider the defendants' submissions").

## 2. Underlying State Law

As explained in the previous Section, the substance of the fraudulent joinder analysis (that is, whether the plaintiff has made a colorable claim against the resident defendant) is provided by state law. In this case, Plaintiff asserts a single claim against both Defendants: violation of Florida's Whistle Blower Act, § 448.102, Fla. Stat., which creates a private cause of action against an "employer" for "retaliatory personnel action against an employee" due to the employee's participation in a statutorily protected activity or written opposition to unlawful activity. The statute defines "retaliatory personnel action" as "the discharge, suspension, or demotion by an employer of an employee or any other adverse employment action taken by an employer against an employee in the terms and conditions of employment." *Id.* § 448.01(5). As this language demonstrates, an action under this statute may be brought only by an "employee" against an "employer." *See id.* The statute defines these terms fairly generically. An "employee" is "a person who performs services for and under the control and direction of an employer for wages or other remuneration. The term does not include an independent contractor." *Id.* § 448.01(2). An "employer" is "any private individual, firm, partnership, institution, corporation, or association that employees ten or more persons." *Id.* § 448.01(3).

For purposes of the Motion to Remand, the parties do not dispute that Plaintiff was an employee of Defendant Imagine. The parties are in disagreement, however, as to whether Plaintiff is an employee of Defendant Foundation. Plaintiff contends that there is enough evidence in the record to demonstrate a colorable claim that Defendant Foundation "is liable to Plaintiff as one of her co-employers." (Doc. No. 18 at 5; *see also* Doc. No. 20 at 3 ("Defendants are jointly liable to

[Plaintiff] as her employers.").) Thus, Plaintiff appears to assert that Defendant Foundation is liable under Florida's Whistle Blower Act as a joint employer.

When interpreting state remedial statutes relating to employment or civil rights, Florida courts often look to federal decisions interpreting parallel federal statutes as a guide. *E.g.*, *Brown Distrib. Co. of W. Palm Beach v. Marcell*, 890 So. 2d 1227, 1230 n. 1 (Fla. 4th DCA 2005) (citation omitted); *Martinolich v. Golden Leaf Mgmt., Inc.*, 786 So. 2d 613, 615 (Fla. 3d DCA 2001) (citing cases); *Fla. State Univ. v. Sondel*, 685 So. 2d 923, 925 n.1 (Fla. 1st DCA 1996) (citation omitted). Specifically with regard to Florida's Whistle Blower Act, the Third District Court of Appeal of Florida has adopted the Eleventh Circuit's interpretation of "employer" in the Title VII context. *Martinolich*, 786 So. 2d at 615-16 (quoting *Lyes v. City of Riviera Beach*, 166 F.3d 1332, 1341 (11th Cir. 1999)); *Diaz v. Impex of Doral, Inc.*, 7 So. 3d 591, 593-94 (Fla. 3d DCA 2009) (citing *Martinolich*, 786 So. 2d 613).

The Eleventh Circuit in *Lyes* described the "joint employer" test as follows: "where two entities contract with each other for the performance of some task, and one company retains sufficient control over the terms and conditions of employment of the other company's employees, we may treat the entities as 'joint employers' . . . ." *Lyes*, 166 F.3d at 1341. In determining whether a defendant is a joint employer, Florida courts consider whether the defendant exercised control over recruitment, employee evaluation, personnel policies, wage structures, staff schedules, bookkeeping and accounting procedures, benefits plans, payment of wages, income tax withholding, and the hiring and firing of employees. *Diaz*, 7 So. 3d at 592; *Martinolich*, 786 So. 2d at 615-16; *see also Virgo v. Riviera Beach Assocs., Ltd.*, 30 F.3d 1350, 1360 (11th Cir. 1994) (similar analysis in a Title VII case); *Gilbert v. Choo-Choo Partners II, LLC*, No. 1:05-cv-99, 2005 WL 1263065, at *4 (E.D.

Tenn. May 26, 2005) (utilizing the same joint employer analysis to determine whether a resident defendant was fraudulently joined in a Tennessee Human Rights Act case); *Acosta v. Drury Inns, Inc.*, 400 F. Supp. 916, 919-20 (W.D. Tex. 2005) (same analysis under Title VII and the Texas Commission on Human Rights Act).

### B. Application of the Law

In the instant case, the record is devoid of evidence to support Plaintiff's argument that Defendant Foundation is her joint employer. In the substantive portions of her Verified Complaint, Plaintiff states the following regarding Defendant Foundation:

> 7. At all times relevant herein, the Foundation was a Florida non-profit corporation with its principal offices located at 2310 New Beginnings Rd., Suite 118, Kissimmee, Osceola County, Florida. The Foundation was incorporated for the purpose of organizing and operating charter schools in Osceola County, Florida.
>
> 8. At all times relevant herein, the Foundation owned the charter for P.M. Wells Elementary ("P.M. Wells"), located at 2426 Remington Blvd., Kissimmee, Osceola County, Florida.
>
> * * *
>
> 10. At all times relevant herein, the Foundation contracted with Imagine to provide management services for the P.M. Wells school facility.
>
> 11. At all times relevant herein, Imagine managed and operated P.M. Wells pursuant to a contract with the Foundation, including supervising employees, including Ragbir, at the P.M. Wells facility in Osceola County, Florida. As such, Imagine is governed by local, regional, state and federal rules, regulations and laws.

(Doc. No. 2 at 2-3.) Plaintiff names Defendant Foundation in her Complaint but offers nothing other than the statements reproduced above to demonstrate a basis for Defendant Foundation's liability. In contrast, Plaintiff twice mentions "her employment with Defendant Imagine." (*Id.* at 4.) Thus, the face of the Complaint fails to set forth any discernable theory of liability as to Defendant Foundation.

Moreover, Plaintiff offers no evidence to support her claim against Defendant Foundation. She cites to the documents filed in the record by Defendant Foundation concerning the Management Agreement between the two Defendants and notes that in this Agreement Defendant Foundation retains the right to approve all principals selected by Defendant Imagine.[7] (Doc. No. 18 at 5-6.) She explains:

> Plaintiff's Verified Complaint detailed the illegal actions of the principals she dealt with at P. M. Wells Elementary School. Therefore, at this stage of the case, it can not be determined that Plaintiff has done anything other than properly join The Foundation as a co-defendant based, at least in part, by [sic] the actions of principals subject to the ultimate control of The Foundation.

(*Id.* at 6.) Plaintiff's argument is not well taken. Defendant Foundation's ability to initially approve the selections of principals by Defendant Imagine does not subject the principals to "the ultimate control of The Foundation" as Plaintiff suggests. She does not claim that she was employed as a principal; therefore, this fact bears little relevance to her joint employer argument.

Plaintiff has not offered any evidence to otherwise suggest that she was employed in any capacity by Defendant Foundation. To the contrary, Plaintiff admitted during her deposition that

---

[7] The relevant provision states in pertinent part:

Administrator [Imagine] shall employ sufficient personnel to operate the Charter School, which may include, without limiting the generality of the foregoing, a principal and such administrators, a curriculum coordinator, business manager, teachers, clerical, cafeteria, nursing, security, and such other staff to enable Administrator to operate the Charter School. Such personnel may be employees of Administrator or of an employee staff leasing company engaged by Administrator, or an employee contracted by Administrator. Administrator shall employ such personnel as Administrator, in its sole judgment, determines is necessary to properly operate the Charter School. Notwithstanding the foregoing, Foundation shall have the right to approve each principal selected by Administrator, which approval shall not be unreasonably withheld or delayed.

(Doc. No. 1-6 at 7.)

she did not perform any work directly for Defendant Foundation, she did not have a written employment contract with Defendant Foundation but only with Defendant Imagine, she did not have any verbal agreement to perform services for Defendant Foundation, she was not supervised by and did not report to anyone at Defendant Foundation, she was not paid by Defendant Foundation, and she did not have any knowledge of anyone at Defendant Foundation being involved in the decision to terminate her employment. (Doc. No. 1-5 at 4-6.)

This testimony is consistent with the undisputed affidavit included in Defendant's Notice of Removal which was provided by Ralph A. Garbart, II, the Central Florida Regional Director for Defendant Imagine. (Doc. No. 1-6 at 1-3.) As the regional director, Mr. Garbart oversees the P.M. Wells Charter Elementary School. (*Id.*) He states that Defendant Imagine is "responsible for organizing, developing, managing, staffing, and operating P.M. Wells, in accordance with the [Management Agreement]." (*Id.* at 2.) "The individuals hired to work at P.M. Wells under the contract such as Lilawatie Ragbir are employees of Imagine Schools." (*Id.*) According to Mr. Garbart, Defendant Imagine and Defendant Foundation are entirely separate entities with no common ownership or management. (*Id.*) Mr. Garbart concludes by stating:

> [6.] The Foundation does not make any employment decisions with respect to employees of Imagine Schools, other than the limited approval of the school principal. At no time did Lilawatie Ragbir ever serve as P.M. Wells' school principal. The Foundation is not involved in the hiring or firing decisions of Imagine Schools' employees; does not pay salaries or benefits to Imagine Schools' employees; is not authorized to assign work to Imagine Schools' employees; and does not have access to the personnel files of Imagine Schools' employees.
>
> 7. Imagine Schools was Lilawatie Ragbir's employer when she worked at P.M. Wells. The Foundation was not Lilawatie Ragbir's employer. The Foundation was not involved in any way in any of the adverse personnel actions alleged by Lilawatie Ragbir in her Complaint. In fact, the Foundation was neither consulted with, nor even made aware of, any of the adverse personnel actions alleged by Lilawatie Ragbir in her Complaint. Simply stated, the Foundation had absolutely nothing to

> do with Lilawatie Ragbir or any of the personnel actions that she contests in her
> Complaint.

(*Id.* at 3.)

The undisputed evidence in this case demonstrates that Defendant Foundation had no control over the terms and conditions of Plaintiff's employment. There is nothing in the Complaint or the record evidence to suggest that Defendant Foundation was in any way involved in decisions concerning the salary, work schedule, benefits, hiring, or firing of Plaintiff. As was the case in *Legg*, 428 F.3d at 1323, there is no question of fact for the Court to resolve in favor of the Plaintiff, and there is no reasonable possibility that a state court would find that Plaintiff has stated a claim against Defendant Foundation.

The former Fifth Circuit explained that when considering a claim of fraudulent joinder, a court "need only decide whether there was a reasonable basis in law and fact for such a contention in the state court suits. Stated differently, was there substance to the claims?" *Parks*, 308 F.2d at 479-80. As to Plaintiff's claim that Defendant Foundation may be liable as her joint employer under Florida's Whistle Blower Act, the answer to this question is clearly no. Defendants have met their burden to prove by clear and convincing evidence, all of which was unrebutted by Plaintiff, that Defendant Foundation was fraudulently joined in this action.[8] Therefore, the Court must dismiss Defendant Foundation from the case and deny Plaintiff's Motion to Remand. *Florence*, 484 F.3d at 1297 (citing *Henderson*, 454 F.3d at 1281).

---

[8] The Court's finding that Defendant Foundation was fraudulently joined to defeat diversity jurisdiction is supported also by Plaintiff's obstinate refusal to admit that her damages exceeded the jurisdictional minimum during discovery.

**Conclusion**

Based on the foregoing, it is **ORDERED** and **ADJUDGED** that:

1. Defendant Foundation for Osceola Education, Inc. is **DISMISSED** from this action **WITHOUT PREJUDICE** to whatever relief Plaintiff may seek from such defendant in a separately filed case;

2. The Motion for Summary Judgment by Defendant Foundation for Osceola Education, Inc., (Doc. No. 5), is **DENIED AS MOOT** because this defendant is no longer a party to the action;

3. The Motion to Remand by Plaintiff Lilawatie Ragbir, (Doc. No. 18), is **DENIED**; and

4. The Motion to Deny Defendant's Motion for Summary Judgment as Premature or, Alternatively, to Allow a Delay of Plaintiff's Response to Defendant's Motion for Summary Judgment Pending Discovery by Plaintiff, (Doc. No. 20), is **DENIED AS MOOT**.

**DONE** and **ORDERED** in Chambers in Orlando, Florida on August 3, 2009.

*[Signature]*

PATRICIA C. FAWSETT, JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:
Counsel of Record